## VANDERBERG, Appellant, v. KANSAS CITY, MISSOURI, GAS COMPANY.

### Division One, November 21, 1906.

1. APPELLATE JURISDICTION: Amount in Dispute: Ex Delicto Actions.  Jurisdiction of the appeal, where plaintiff's whole case as presented below becomes a part of the record through a bill of exceptions which shows that a demurrer was sustained and the case taken from the jury at the close of plaintiff's evidence, is not to be determined merely by the amount of damages asked for.  The amount in dispute is not the mere paper or colorable amount asked for in the petition, but is to be determined from the disclosures of the entire record.

2. ———: ———: ———: Case Stated.  Plaintiff, the lessee of a rooming house, fitted with gas plumbing and connected with defendant's mains, which was engaged in manufacturing and vending gas for light and fuel in Kansas City, and enjoyed

a monopoly in such business under a franchise from the city, in her petition alleged that the gas was shut off, without excuse and maliciously, and that she was refused gas after she had offered to make a deposit of money therefor. She states her damages to be great inconvenience, and loss of profits because of inability to rent her rooms, and lays the amount at $5,000 actual and $5,000 punitive damages. At the close of her evidence the court took the case from the jury by sustaining a demurrer, and she appeals. There was no evidence of ill-will, spite or intentional wrong, and the only claim for damages now asserted is for loss of profits, inconvenience and added labor, and the record shows that at most that could not exceed a few hundred dollars. *Held*, that the Supreme Court has no jurisdiction of the appeal on the ground that the amount in dispute is in excess of $4,500.

Appeal from Jackson Circuit Court.—*Hon. J. D. Slover*, Judge.

Transferred to Kansas City Court of Appeals.

*Burnham & Brewster* for appellant.

*Gage, Ladd & Small* for respondent.

This court has no jurisdiction. The amount in dispute is insufficient. The amount in dispute is not determined by the prayer of the petition, but by the record. State, etc., v. Gilmore, 106 Mo. 436; May v. Jarvis-Conklin Co., 138 Mo. 186; Wilson v. Russler, 162 Mo. 565; Anchor Milling Co. v. Walsh, 97 Mo. 287; Wolff v. Matthews, 98 Mo. 246; State ex rel. v. Gill, 107 Mo. 44; Rerchenbach v. United Masonic Assn., 112 Mo. 22; Kirchgraber v. Lloyd, 59 Mo. App. 59. First. Punitive damages could not be recovered. This was expressly so ruled in Miller v. Wilkesbarre Gas Co., 206 Pa. St. 254, a case "on all-fours" in this respect, where the gas company shut off one tenant's gas because he refused to pay a delinquent bill of prior tenant. Second. No actual damages were shown for failure to supply gas to that portion of the house occupied by plaintiff, her husband and family. Gas Co. v. Stor-

age Co., 111 Mich. 401. Third. There was no legal evidence that anyone refused to rent plaintiff's rooms because of the absence of gas. She had rented them from May to February without gas, and her statement that certain persons said they would not rent them without gas after February 18th, was mere hearsay. Fourth. The undisputed testimony of plaintiff herself showed that the gas company put in a special meter in the house so that all tenants who wanted gas could have it, but that only one availed herself of the privilege, and there is no evidence that plaintiff informed the other applicants for rooms of this privilege, or that they knew of it. In fact, she must have led them to believe that they could not have gas, which was not the case. If the plaintiff has any cause of action, therefore, it is only for nominal damages, and the highest amount involved, on plaintiff's own theory, is only $161, which is much below the jurisdiction of this court.

LAMM, J.—On March 18, 1903, plaintiff sued defendant as a public service corporation engaged in manufacturing and vending gas for light and fuel in Kansas City, Missouri, and enjoying a monopoly in such business under a franchise granted it by said city. In a nut-shell, her complaint is that at a certain time she was tenant and lessee (from month to month) of No. 1314 West 10th Street—a rooming house. That said house was fitted with gas plumbing and connected with defendant's mains. That on her application on February 10, 1903, gas was turned on by defendant, and thereafter, on February 16, 1903, without excuse and maliciously, her gas was cut off. That on February 18th she again applied to defendant for gas, offering to make any deposit required by defendant and comply with all its reasonable rules and regulations, and was refused gas.

Plaintiff sets forth the elements of her damages thus: "She has been put to great inconvenience," she

says, "and damage in the use of her said house as a dwelling; that she can not rent the rooms in her said house for as much per week as she could if she could supply gas therein; and that she has been greatly injured and damaged; that she will continue to be inconvenienced and damaged by reason of defendant's refusal to supply gas to said house for her use, and that of her roomers therein." She lays her damages at $5,000 actual and $5,000 punitive damages.

The answer tendered the general issue.

At the close of plaintiff's evidence, the trial court took the case from the jury by sustaining a demurrer, and plaintiff comes here.

At the threshold we are confronted with a question of jurisdiction. By the constitutional amendment of 1884, sec. 3 (see R. S. 1899, p. 93) the General Assembly was given power to "increase or diminish the pecuniary limit of the jurisdiction of the courts of appeals." In 1901 (Laws 1901, p. 107) the General Assembly acted under that power and provided that the courts of appeals should have jurisdiction of appeals and writs of error in all cases where the "amount in dispute," exclusive of costs, should not exceed the sum of $4,500. Prior to that time the pecuniary limit had been regulated by the Constitution (see sec. 12, art. 6, Constitution of Missouri), and "the amount in dispute" was placed at $2,500, exclusive of costs.

The phrase, "amount in dispute," has been before this court and the courts of appeals more than once for interpretation and its intent and application may be said to have been guardedly arrived at (or approached) by a gradual process of judicial exclusion and inclusion, as the cases presented for decision seemed to require.

For example, if a plaintiff is cast on demurrer to his petition, it would seem that the amount stated in the petition controls the jurisdiction on appeal; but where, as in this case, the whole case of plaintiff is

presented below and becomes a part of the record through a bill of exceptions, this court has hesitated to give to a plaintiff the whimsical and unregulated power to control its jurisdiction by a mere stroke of his pen in his petition, and we have reserved to ourselves the right in emergency to control the question of jurisdiction by looking into the whole record far enough to do so—by seeing to it that jurisdiction is not foisted upon us by a mere paper or colorable amount in dispute, but is regulated by the real amount in dispute on appeal as disclosed by the entire record.

In Anchor Milling Co. v. Walsh, *infra,* plaintiff's cause of action was based on fraud and mistake and this court, speaking through BARCLAY, J., said: "We think it was intended that the real, rather than the formal, demand of plaintiff should be considered in determining our jurisdiction, when the record discloses both."

Manifestly the nicest discrimination should be exercised in determining jurisdiction, by looking into the whole record, in actions *ex delicto,* and the record should control the petition, on the amount in dispute, only in such a pronounced case as might arise where the damage sued for is susceptible of being readily arrived at with reasonable certainty from accounts, documents or unquestionable oral evidence (as satisfactory as either) and where the damages may be ascertained by well-known rules regulating the measure of damages. And this should not be done where a real and not a mere colorable question of punitive damages is lodged in the case, nor where other elements of damages exist that are not readily susceptible of reasonably certain calculation by well-known and easily-applied rules. Take an illustration—a rather inflamed one, possibly, but which will serve our purpose. Suppose A. sued B. for damages based on B's wrongful act in depriving him of the services of a coach horse or a milch cow for a few days or weeks, and laid his damages at, say, $10,-

000. Suppose the uncontradicted evidence showed the services of the cow or horse were of the value of $10. The cause comes to this court by appeal. Must we entertain jurisdiction of that cause merely because of the allegation in plaintiff's petition? We think not. Such construction would mischievously circumvent the very purpose of the statute.

Frequently the amount in dispute is materially affected by eliminating items and elements at the trial, and the record shows this. Would it not be an act sounding to folly for us to say that, for the purposes of jurisdiction on appeal, we must continue to consider such eliminated matters? The reasoning of the following cases, we think, sustains the foregoing view of the law: State ex rel. v. Rombauer, 130 Mo. 288; Clothing Co. v. Watson, 168 Mo. 133; Kirchgraber v. Lloyd, 59 Mo. App. 59; State ex rel. King v. Gill, 107 Mo. 44; Wolff v. Matthews, 98 Mo. 246; State ex rel. v. Lewis, 96 Mo. 146; May v. Trust Co., 138 Mo. 447; Kerr v. Simmons, 82 Mo. l. c. 273, et seq.; Wilson v. Russler, 162 Mo. 565 (decided in Banc); Anchor Milling Co. v. Walsh, 97 Mo. 287; State to use v. Gilmore, 106 Mo. 436. See the reasoning in Harris v. Rosenberger, 145 Fed. 449, on the kindred matter of a constitutional question, wherein it is held that the claim must be real and substantial, not merely colorable or without reasonable foundation. So, in Phoenix Powder Mfg. Co. v. Railroad, 196 Mo. 663, it was held that we would look into the whole record far enough to see if a real and not a mere colorable Federal question was involved.

Hennessy v. Bavarian Brewing Co., 145 Mo. 104, was a suit for damages for the negligent death of plaintiff's minor son. That was a case in which defendant's demurrer was sustained at the close of plaintiff's case and it was held that the elements constituting the damage were uncertain in that "we cannot judicially determine how much any given minor would earn between the ages of 14 and 21." The reasoning of the case is

not out of line with the decisions heretofore quoted. But language is held therein which seems not to question our inherent right to look into the whole record on a question of jurisdiction—a right steadily insisted upon in a line of decisions—but doubts the wisdom of our so doing. It would seem that the learned writer, in apparently laying down the rule in actions *ex delicto* that the amount in dispute is the amount named in the petition until the claim has been merged into a judgment, leaned on Vineyard v. Lynch, 86 Mo. 684. That case, however, was merely an exposition of our statute, a very ancient one, on costs (sec. 995, R. S. 1879, now sec. 1552, R. S. 1899), and reads as follows: *"In actions ex delicto, costs, how awarded.* In all actions not founded on contract, the damages claimed in the petition shall determine the jurisdiction of the court, and if the plaintiff recover any damages he shall recover his costs.''    That statute was evidently enacted to furnish a plain statutory rule regulating questions of costs where plaintiff sued in a circuit court in a case sounding in tort and recovered an amount, less than that within the exclusive or concurrent jurisdiction of the circuit court, and which was within the exclusive jurisdiction of a justice of the peace. It was held in that case that the circuit court had jurisdiction because of the statutory mandate, and the case would not seem to be determinative of the judicial question here, which was originally, as said, a constitutional matter and to be determined by the interpretation of the phrase, "amount in dispute," and is now a statutory matter to be determined by the same interpretation.

Looking into this record, what is the real "amount in dispute?" We find not a particle of evidence showing ill-will, spite or intentional wrong in any one of the protean shapes which malice takes on. In fact, appellant's learned counsel merely contend that their client "was entitled to recover for her loss of profits, as well as for her inconvenience and added labor." Hence,

there is no punitive damages in the "amount in dispute." That matter was set at rest below and is not in this record on appeal.

If there was any evidence below directed to the question of inconvenience, we have not been able to put our finger on it; so that, if mere "inconvenience" could be an element of damages, a point of course not decided by us, it is not included in the real "amount in dispute."

The same disposition may be made of the contention relating to "added labor." No such evidence and no such issue are preserved in the record.

"The amount in dispute," then, narrows itself to a question of loss of profits in the rooming house arising from the alleged act of defendant. The amount involved, as shown by the evidence, is small—at most, but a hundred or, say, two hundred dollars and, if any such profits exist, they should be readily ascertainable with reasonable certainty. The defendant contends there was no competent proof of any loss of profits. It contends that plaintiff's husband applied for gas and it is answerable alone to him, if to any one. It contends that under its franchise (on the facts disclosed by plaintiff's case) it had the right to deny plaintiff gas and makes other contentions under this record, all of which should be passed on by the court having jurisdiction.

In our opinion, we have no jurisdiction of this appeal. Hence, the cause is certified to the Kansas City Court of Appeals for its determination.

All concur.